STATE ex rel. BARNETT

v.

SAPPINGTON et al.

No. 22057.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

Carl F. Sapp, Columbia, for appellant.

L. W. Byars, Columbia, for respondents.

BROADDUS, Judge.

This is a proceeding in mandamus wherein relator, Cecil Barnett, seeks to obtain a peremptory writ against respondents commanding them to issue a permit for the sale of intoxicating liquor in the original package. After a hearing, the trial court quashed the alternative writ. Relator appealed to the Supreme Court. That court held that it was without jurisdiction because no constitutional question had been sufficiently raised or preserved, and transferred the case to this court. See State ex rel. Barnett v. Sappington, Mo.Sup., 260 S.W. 2d 669.

Relator owns and operates a drug store located at 901 West Broadway in the City of Columbia. Respondents are members of the City Council of that City. Prior to May 19, 1952, relator did not have a license to sell and did not sell intoxicating liquor in the original package in his drug store. He made application to the City Council for such license, and on May 19, 1952, said application was rejected. Subsequently, relator made further application to respondents for said license and this too was denied on June 9, 1952.

On May 6, 1935, the City of Columbia enacted zoning ordinances. These are sections 1156 to 1183 of the general ordinances of that City. These zoning ordinances divide the City into 7 districts as follows: "District A. First Dwelling District; District B, Second Dwelling District; District C, Apartment District; Distict D, Local Business District; District E, Highway Business District; District F, Central Business District; District G, Light Industrial District." Section 1163 of those ordinances was amended on June 19, 1951, further restricting the permissive uses of buildings, structures, land or premises in District D. Relator's drug store is located in District D.

The above ordinances were in full force and effect at the time relator made his two applications for the package liquor license and at that time the said applications were denied by respondents on May 19, 1952, and June 9, 1952, respectively.

After Section 1163 was amended on June 19, 1951, the permissive uses in District D (in which relator's drug store is located) were enumerated as follows: "a. Residential uses permitted in Districts A and B. (b) Neighborhood retail store for the sale of groceries, meats, milk products and drugs, * * *."

Respondents' return to the writ alleged that the sale of intoxicating liquor is a permissive use of buildings and structures located in Zoning Districts E, F and G, but is not a permissive use in Districts A, B, C and D; and that District D contains separate areas dispersed in residential districts of the City. Relator's reply denied only that the sale of intoxicating liquor in the original package is not a permissive use of the buildings and structures located in District D.

Respondents admit that relator is a person of good moral character and possesses the necessary qualifications to sell intoxicating liquor by the package under the intoxicating liquor ordinances of the City, but assert that his applications were denied for the reason that the sale of intoxicating liquor is not a permissive use of premises located in District D, under the Zoning Ordinances.

The position of relator is "that he operates a drug store as is permitted by Section 1163 (of the zoning ordinances); that he meets all the other requirements for moral character, location, etc., and that he is entitled to a license to sell liquor in the original package in connection with his drug store business as permitted by Section 363.3(h) of the intoxicating liquor ordinances of the City of Columbia, Missouri, and the laws and statutes of the State of Missouri." He says "he is entitled as a matter of right to have a license." The section of the statute on which he relies is 311.200 RSMo 1949, V.A.M.S. We will set it out later.

Chapter 89, RSMo 1949, V.A.M.S., empowers cities, having a population of 10,000 inhabitants or over, to enact zoning ordinances for the purpose of promoting health, safety, morals and the general welfare of the community and, among other things, to regulate the location and use of buildings, structures and land for trade, industry, residence or other purposes.

Pursuant to the authority granted by the State, the City of Columbia enacted its original zoning ordinances on May 6, 1935. These zoning ordinances made comprehensive regulation of the use of land and structures throughout the City and, as stated, divide the City into 7 separate zoning areas. Under the Supreme Court's opinion in the instant case, the validity of these ordinances is not now in question.

■ The language of these zoning ordinances in enumerating uses of land is permissive rather than restrictive. This method of ordinance writing is well recognized. As stated in McQuillin, Municipal Corporations, 3rd Ed. Vol. 8, § 25.124: "Zoning ordinances may be permissive in form, permitting specified uses and buildings and prohibiting all others within a district, or they may be prohibitive in form, prohibiting specified uses and buildings and permitting all others * * *. Thus, an argument that an ordinance should have listed prohibited uses in a residential district,

leaving unimpaired all other uses, instead of listing the permitted uses and prohibiting all others, is without merit."

As said in City of St. Louis v. Art Publication Soc., Mo.App., 203 S.W.2d 902, 905: "As the ordinance is drawn, only those uses are permitted in a particular character of zone or district for which definite provision is made in the portion of the ordinance having application to such zone or district, and any use not expressly permitted in a given zone or district is thereby automatically excluded from it. State ex rel. Kaegel v. Holekamp, (Mo.App.) 151 S.W.2d 685."

Section 363.3(h) of the intoxicating liquor ordinances referred to by relator follows the wording of the state statute, Section 311.200 RSMo 1949, V.A.M.S. That statute says: "No license shall be issued for the sale of intoxicating liquor in the original package, not to be consumed upon the premises where sold, except to a person engaged in, and to be used in connection with the operation of one or more of the following businesses: (1) A drug store; (2) a cigar and tobacco store; (3) a grocery store; (4) a general merchandise store; (5) a confectionery store * * *."

Our Supreme Court construing the above statute in the case of State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S.W. 2d 809, held that it constitutes a limitation upon the authority of the supervisor of liquor control and restricts him in the issuance of package licenses to persons engaged in a business mentioned, "rather than being a grant of a privilege" to grocers and others to the issuance of a license upon compliance with the provisions of Sections 311.060 and 311.230, which pertain to qualifications and the giving of bond.

Thus it is to be seen that relator has no privilege to sell intoxicating liquor by virtue of the fact that he operates a drug store. But he says that he is entitled to a license for the reason that nowhere in the zoning ordinances is the sale of intoxicating liquor expressly prohibited. As pointed out above the zoning ordinances involved are written in the permissive rather than the restrictive style, which method is entirely proper.

We have been cited to no case in Missouri construing the language of zoning ordinances with relation to the sale of intoxicating liquor. However, a similar situation to the one here involved was before the Supreme Court of Pennsylvania in Veltri Zoning Case, 355 Pa. 135, 49 A.2d 369. In that case one Veltri obtained a liquor license from the city liquor board and sold intoxicating liquor on his premises for a period of three weeks, when he found that he also had to secure a certificate from the Board of Adjustments under the zoning ordinance. Veltri owned a "dairy store in which he sold sandwiches, cold cuts, ice cream, soda water, pop, milk shakes and coffee." He was doing business in this manner when a city ordinance was enacted setting up the area in which his store was located as a "Class A" residence zone. Veltri was entitled to continue his same business as a non-conforming use, but he desired also to sell intoxicating liquor "as part of what he called his restaurant business." The Board found that although he operated a dairy store selling the items set forth above, and was entitled to continue the same business as a non-conforming use, the additional sale of intoxicating liquor had "changed and extended the theretofore existing non-conforming use of the building," and denied his application. The court upheld this action.

We hold, as did the learned trial court, that relator is not entitled as a matter of right to have a license.

Relator further contends "that the refusal of the Council to issue a license to relator is an arbitrary and discriminatory refusal of the respondents to the relator." His contention is based upon the fact that a license to sell intoxicating liquor in the original package was issued June 30, 1952, to one Herbert Marsh, doing business as Marsh's Drug Store, said store being located in District D, the same District in which relator's store is located. The fact is that Marsh and his predecessors, have been licensed to sell liquor by the package

in the same drug store continuously from year to year since prior to the enactment of the original zoning ordinances on the 6th day of May, 1935.

Relator fails to take into account Sec. 1172 of the zoning ordinances relating to non-conforming use. That section provides: "The lawful use of land existing at the time of the passage of this ordinance, although such use does not conform to the provisions hereof, may be continued * * *." Similar provisions appear in most zoning ordinances and statutes throughout the country and are valid. Mc-Quillin, Municipal Corporations, 3rd Ed. Vol. 8, § 25.180.

Relator did not have a license to sell, nor was he selling intoxicating liquor prior to the amendment of Sec. 1163, on June 19, 1951. He therefore had no lawful right to an intoxicating liquor license as did Herbert Marsh.

The judgment of the trial court is correct and should be affirmed. It is so ordered.

All concur.